**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| GINO FRACCHIOLLA | : |
| 305 Coronado Ave. | : |
| Long Beach, CA 90814 | : |
| | :    CIVIL ACTION |
| Plaintiff, | : |
| v. | :    No.: |
| | : |
| HIRE MY TEAM, LLC | : |
| 1635 Market St. | : |
| Philadelphia, PA 19103 | : |
| and | :    **JURY TRIAL DEMANDED** |
| HIRE MY AGENCY, LLC | : |
| 1635 Market St. | : |
| Philadelphia, PA 19103 | : |
| and | : |
| DIGITAL CANDY, LLC | : |
| 1635 Market St. | : |
| Philadelphia, PA 19103 | : |
| and | : |
| DIGITAL EQUITY, LLC | : |
| 1635 Market St. | : |
| Philadelphia, PA 19103 | : |
| and | : |
| ADETUNJI THOMAS-QUARCOO | : |
| a/k/a Thomas Parker | : |
| 1635 Market St. | : |
| Philadelphia, PA 19103 | : |
| and | : |
| SANTOS GONZALEZ | : |
| a/k/a Jay Gonzales | : |
| 1635 Market St. | : |
| Philadelphia, PA 19103 | : |
| | : |
| Defendants. | : |

---

## <u>CIVIL ACTION COMPLAINT</u>

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## I.      INTRODUCTION

1.      This action has been initiated by Gino Fracchiolla (hereinafter referred to as "Plaintiff," unless indicated otherwise) against Hire My Team, LLC, Hire My Agency, LLC, Digital Candy, LLC, Digital Equity, LLC, Adetunji Thomas-Quarcoo, and Santos Gonzalez (hereinafter collectively referred to as "Defendants") for violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. §§ 201 *et. seq.*), the Pennsylvania Minimum Wage Act ("PMWA" - 43 P.S. §§ 333.101—333.115), the Pennsylvania Wage Payment and Collection Law ("PWCL" - 43 P.S. §§ 260.1 *et. seq.*), Title 9 of the Philadelphia Code, the Wage Theft Ordinance, and other applicable state law(s). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## II.      JURISDICTION AND VENUE

2.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims set forth herein.

3.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subject to personal jurisdiction

(rendering Defendants residents of the Eastern District of Pennsylvania) and for the reasons listed below:

    a.  Plaintiff's direct supervisors (the individuals responsible for the unlawful employment practices/actions outlined herein) are based out of Defendants' Philadelphia, Pennsylvania office, located at 1635 Market St., Philadelphia, Pennsylvania;

    b.  Defendants' handbook includes the 1635 Market St., Philadelphia, Pennsylvania location (not the location at which Plaintiff worked in California);

    c.  Plaintiff received e-mails during his employment that all payments from customers whom Plaintiff signed up had to be wired to the 1635 Market St., Philadelphia, Pennsylvania location;

    d.  Upon information and belief, Defendants' business operations were ran out of the 1635 Market St., Philadelphia, Pennsylvania location;

    e.  Plaintiff signed a contract at the beginning of his employment that indicated the terms of such contract were governed by the laws of the Commonwealth of Pennsylvania; and

    f.  The aforesaid contract that Plaintiff signed at the beginning of his employment also listed a Philadelphia, Pennsylvania address as Defendants' main office.

### III.  <u>PARTIES</u>

5.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.     Plaintiff is an adult individual, and he has and continues to reside at the above-captioned address.

7.     Defendants Hire My Team, LLC, Hire My Agency, LLC, Digital Candy, LLC, and Digital Equity, LLC (hereinafter collectively referred to as "Defendant Entities") have and continue to constitute a single business, venture, enterprise and conflated entanglement of operations.  Defendant Entities are properly named in this lawsuit as a joint employer, integrated employer or single employer of Plaintiff. More specifically:

> (a) These businesses have been operated and managed by the same managers and/or owners, Defendant Adetunji Thomas-Ouarcoo and Defendant Santos Gonzalez;
>
> (b) These business names are used interchangeably depending upon project or work needed for different projects or for other reasons;
>
> (c) While Plaintiff represented himself as an employee of Defendant Hire My Team, LLC, he received payment of wages from several of these entities throughout his employment, including Defendant Hire My Team, LLC, Defendant Digital Candy, LLC and Defendant Digital Equity.
>
> (d) Plaintiff appeared on Defendant Hire My Team, LLC's and Defendant Hire My Agency, LLC's website as an employee – specifically the Vice President of Sales.
>
> (e) Defendant Entities overlap in finance, resources, negotiation, office space, management and ownership such that they basically function as a single enterprise.

8.     Defendant Adetunji Thomas-Quarcoo (hereinafter "Defendant Parker") is an owner, high-level manager, and continual operator of Defendant Entities who goes by the alias "Tom Parker." Defendant Parker was responsible for managing the terms and conditions of Plaintiff's employment with Defendant Entities, including but not limited to his compensation.

9.     Defendant Santos Gonzalez (hereinafter "Defendant Gonzalez") is a high-level manager, and continual operator of Defendant Entities who goes by the alias "Jay Gonzalez."

Defendant Gonzalez was responsible for managing the terms and conditions of Plaintiff's employment with Defendant Entities, including but not limited to his compensation.

10.     At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

11.     Every unlawful employment practice/action taken against Plaintiff were controlled by, decided by, and orchestrated by Defendant Individuals.  They are therefore named individually in each and every cause of action below, as each statute and/or legal claim expressly permits individual liability for high-level management and/or owners such as Defendant Individuals.

### IV.     FACTUAL BACKGROUND

12.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13.     Plaintiff was hired by Defendants in or about December of 2018.

14.     Throughout his employment with Defendants, Plaintiff was primarily supervised by Defendant Individuals.

15.     At the time of his hire, Plaintiff was given the title of Director of Partnerships and Business Development.

16.     On or about April 1, 2019, Plaintiff was promoted to Vice President of Sales – California Division.

17.     Defendants are engaged in the business of web design, web development, search engine optimization ("SEO"), and digital marketing (among other web-based services) and Plaintiff was responsible (in both of his roles with Defendants) to sell those services.

## Misclassification as "Independent Contractor"

18.    At the outset of Plaintiff's employment with Defendants, Defendants attempted to classify Plaintiff as an independent contractor and had him sign an agreement stating that he was an independent contractor.

19.    However, notwithstanding the contract Plaintiff signed at the beginning of his employment (discussed *supra*), he was at all times during his employment with Defendants misclassified as an independent contractor, when in fact he was an "employee," as evidenced by the following:

   a.   Defendants dictated Plaintiff's working hours. For example, Plaintiff was directed when he needed to cover "LiveChats" – which included him working late nights and on weekends;

   b.   Defendants often times instructed and/or dictated what Plaintiff needed to work on throughout the week/day;

   c.   Plaintiff was provided with an organizational chart, which had him directly reporting to Sarah Clay (Director of Operations – hereinafter "Clay") and indirectly reporting to Defendant Individuals;

   d.   Plaintiff's office space in California was paid for by Defendants;

   e.   Plaintiff only worked for Defendants during his employment and was not permitted to work for any other company (primarily due to the number of hours that he was required to work for Defendants);

   f.   The sign outside of Plaintiff's office identified that the office was being used for Defendants' business (specifically Hire My Team, LLC);

g.  Plaintiff was given an email address identifying him as an employee of Defendant Hire My Team, LLC;

h.  Plaintiff's email signature line identified him as an employee of Defendant Hire My Team, LLC;

i.  Plaintiff appeared on Defendant Hire My Team, LLC's and Defendant Hire My Agency, LLC's website as an employee (during and even after his employment);

j.  Plaintiff was permitted to address any work concerns with Defendants' management;

k.  Plaintiff was required to obey all directives given by Defendants' management;

l.  Defendants' management set goals for Plaintiff and the team he supervised;

m.  Defendants' management had the ability to deny Plaintiff's access to his accounts and work history;

n.  Plaintiff was required to represent and hold himself out as an employee of Defendants when speaking to staff or clients;

o.  Plaintiff was required to attend meetings and/or telephone conference calls when scheduled by Defendants' management;

p.  Plaintiff's work performance was reviewed and critiqued by Defendants' management;

q.  Plaintiff was consistently supervised by Defendants' management;

r.  Defendants' management had the ability to dismiss Plaintiff's employment based on performance and/or behavior (or other reasons); and

s.  Plaintiff was deemed a "misclassified employee" by the State of California's Employment Development Department ("EDD") when applying for

unemployment benefits after he was terminated from his employment with Defendants. Specially, Christine Sung, a Tax Auditor for the Tax Branch of EDD held Plaintiff to be a common law employee under Section 621(b) of the California Unemployment Insurance Code ("CUIC")[1], Section 13004 of the UCIC[2] and Section 4304-1 of the California Code of Regulations ("CRR") Title 22.[3] *See* E-mails from Christine Sung, attached hereto as "Exhibit A."

---

[1] Section 621(b) of the CUIC provides that "Employee" means all of the following: . . .

(b) Any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee.

[2] Section 13004 of the UCIC states:

'Employee' means a resident individual who receives remuneration for services performed within or without this state or a nonresident individual who receives remuneration for services performed within this state and includes an officer, employee, or elected official of the United States, a state, territory, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing. 'Employee' also includes an officer of a corporation.

Whether an individual provides equipment in the performance of services for remuneration shall not be considered in a determination of whether that individual is an employee.

[3] Section 4304-1 of the California Code of Regulations ("CRR") Title 22 provides in relevant part:

Whether an individual is an employee for the purposes of Sections 621(b) and 13020 of the code will be determined by the usual common law rules applicable in determining an employer-employee relationship. Under those rules, to determine whether one performs services for another as an employee, the most important factor is the right of the principal to control the manner and means of accomplishing a desired result. If the principal has the right to control the manner and means of accomplishing the desired result, whether or not that right is exercised, an employer-employee relationship exists. Strong evidence of that right to control is the principal's right to discharge at will, without cause.

    (a) If it cannot be determined whether the principal has the right to control the manner and means of accomplishing a desired result, the following factors will be taken into consideration:

        (1) Whether or not the one performing the services is engaged in a separately established occupation or business.

        (2) The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of a principal without supervision.

        (3) The skill required in performing the services and accomplishing the desired result.

        (4) Whether the principal or the person providing the services supplies the instrumentalities, tools, and the place of work for the person doing the work.

        (5) The length of time for which the services are performed to determine whether the performance is an isolated event or continuous in nature.

        (6) The method of payment, whether by the time, a piece rate, or by the job.

20.     Based on the foregoing and for other reasons, Plaintiff asserts that he was an employee of Defendants and therefore was deprived of benefits to which an employee would normally be entitled, including but not limited to having income reported to Social Security for retirement and benefits, health benefits, and deprivation of his own work earnings (including overtime compensation – discussed *infra*).

### Defendants' Overtime Violations

21.     Because Plaintiff was misclassified as an independent contractor, he was paid varying lump sums on a weekly basis that Defendants deemed "commissions" and/or bonuses and never kept proper track of the amount of hours that Plaintiff worked during any given week.

22.     Additionally, some weeks during his employment with Defendants, Plaintiff was paid zero dollars.

23.     Plaintiff was also not provided with weekly paychecks providing a breakdown of what was considered commissions vs. bonuses.

24.     Instead, Defendants wired Plaintiff's weekly wages to his bank account and did not deduct federal or state taxes.

---

(7) Whether or not the work is part of the regular business of the principal, or whether the work is not within the regular business of the principal.
(8) Whether or not the parties believe they are creating the relationship of employer and employee.
(9) The extent of actual control exercised by the principal over the manner and means of performing the services.
(10) Whether the principal is or is not engaged in a business enterprise or whether the services being performed are for the benefit or convenience of the principal as an individual.

(b) The factors enumerated in (a) above are indicia of the right to control. Where there is independent evidence that the principal has the right to control the manner and means of performing the service in question it is not necessary to consider the above enumerated factors. When those factors are considered, a determination of whether an individual is an employee will depend upon a grouping of factors that are significant in relationship to the service being performed.

25.     During the course of Plaintiff's employment with Defendants, he was at all times a non-exempt employee who should have been entitled to overtime wages (at a rate of time and one half his average regular hourly rate).

26.     Plaintiff worked an obscene amount of hours for Defendants during his approximate 7-month tenure, often times working 12 hours a day, 6-7 days per week (for a total of approximately 72-84 hours per week).

27.     At no point in time was Plaintiff ever paid overtime compensation under federal or Pennsylvania state law (as required for non-exempt employees).

28.     Furthermore, during the weeks that Plaintiff was paid zero wages or very minimal wages, Defendants also violated federal and Pennsylvania state minimum wages laws by failing to pay him at least $7.25 per hour for each hour that he worked.

29.     At no point in time during his employment with Defendants did Plaintiff qualify as an exempt employee under the Executive, Professional or Administrative exemptions provided for under the FLSA or Pennsylvania Minimum Wage Act.

30.     For example, one element required to fall under any of the above three exemptions, Plaintiff must have been compensated on a salary basis – which he was not, as Plaintiff's pay varied every week, ranging from zero dollars to upwards of $3,000.00.

31.     Plaintiff was also not an outside sales person (but rather performed inside sales) and therefore did not qualify as an exempt employee under the FLSA or the Pennsylvania Minimum Wage Act for those reasons.

32.     Furthermore, while employed with Defendants, Defendants never designated Plaintiff as an employee who fell under any exemption provided for by the FLSA or the

Pennsylvania Minimum Wage Act, as Defendants consistently misclassified him as an independent contractor from the inception of his employment until his termination.

33.     All of Defendants' actions as aforesaid are without question willful, intentional and in blatant disregard for state and federal laws, as evidenced by:

a.   Defendants intentionally misclassifying Plaintiff as an independent contractor to avoid state and federal wage and hour obligations;

b.   Defendants failing to pay Plaintiff overtime compensation for <u>all hours</u> that he worked in excess of 40 hours per week;

c.   Defendants often times failing to pay Plaintiff enough wages and/or withholding/deducting his pay to the point where Plaintiff was being paid below the federal and state mandated minimum wage; and

d.   Defendants failing to keep proper record of the number of hours that Plaintiff worked in any given week.

34.     Plaintiff is therefore owed back pay and liquidated damages for Defendants willful failure to abide by federal and state overtime and minimum wage obligations.[4]

---

[4] *See, e.g., Solis v. Min Fang Yang*, 345 Fed. Appx. 35, 38 (6th Cir. 2009) (affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory"); *Gayle v. Harry's Nurses Registry, Inc*., 594 Fed. Appx. 714, 718 (2d Cir. 2014) (affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "[d]ouble damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden"); *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014) (affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008) (affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26, 35 (1st Cir. 2007) (affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County,* 2000 WL 864220, at *6 (4th Cir. 2000) (affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 405 (7th Cir. 1999)(reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *Nero v. Indus. Molding Corp*., 167 F.3d 921, 929 (5th Cir. 1999) (affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

## Failure to Pay Commissions and Bonuses

35. At the beginning of Plaintiff's employment with Defendants, Defendants agreed to pay Plaintiff the following commissions:

      i. "6% commission on anything Plaintiff sold";

      ii. "8% commission on any deal after $30K sold in a week"; and

      iii. "10% commission on any of Gino's relationships."

36. Shortly after commencing his employment with Defendants, Defendants and Plaintiff agreed that his commission structure would be modified to where Plaintiff would receive 10% base commission and anything he sold and then 12% commission on anything he sold above $15,000.00 in revenue per week.

37. Throughout the course of his employment with Defendants, Plaintiff was also promised additional commissions if he sold certain service packages (presumably as an incentive for Plaintiff to sell those particular packages). For example, Plaintiff was promised in writing that he would receive 20% commission if he sold Platinum or Global Packages and had customers pay in full via wire transfer to Defendants' Philadelphia, PA location.

38. In June of 2019, Plaintiff was sent an e-mail indicating that Defendants would also pay him 20% commission on any "wire for PIF [paid in full] or deposits."

39. On or about April 1, 2019, Plaintiff was promoted to Vice President of Sales – California Division. Along with his promotion, Plaintiff was promised by Defendant Individuals that he would received a 1% override on any revenue that Defendant received per week (to be capped at $10,000 per month). Defendant Parker and Defendant Gonzalez later changed this promise to a 1% override on any revenue that Defendant's California division received per week.

40.     In addition to the aforesaid commissions promised to Plaintiff by Defendants, Plaintiff was also promised various incentive bonuses if he and/or his team met certain goals. The monetary amount guaranteed for these bonuses ranged from $200.00 to $500.00+ per week.

41.     Despite all of Defendants promises and agreements to pay Plaintiff various commissions, overrides, and bonuses, Plaintiff was never paid all commissions, overrides, and/or bonuses that he was entitled to.

42.     In fact, there were a few occasions where Plaintiff was paid zero dollars or very minimal commissions/bonuses despite (1) Defendants' promise to pay him a 1% override on any revenue generated by his division per week; (2) Plaintiff making multiple sales on a weekly basis; (3) Plaintiff meeting certain goals for which Defendants promised to pay bonuses.

43.     Plaintiff often times questioned and complained to Defendants' management about his pay and would indicate that he believed Defendants had not paid him properly under the promises and/or agreements set forth by Defendants' management (regarding commissions, bonuses, and override).

44.     Rather than rectify his concerns by paying him the wages he was entitled to, Defendants' management would instead give Plaintiff the "run around," tell Plaintiff the remainder of his wages would be coming soon (and then still never pay him), blame the lack of wages that Plaintiff received on refunded sales, and/or simply ignore Plaintiff's concerns.

45.     On or about July 5, 2019, shortly following his last complaints and/or expressed concerns regarding non-payment of wages (including commissions, bonuses, and overrides), Plaintiff was terminated from his employment with Defendants.

46.     Defendants first claimed in an email from Defendant Parker that Plaintiff was being terminated for his "lack of respect" and "growing negativity" towards Defendant Parker, Defendant Gonzalez, and Clay.

47.     Later in a post made by Defendant Parker online, Defendant Parker claimed that Plaintiff was terminated because of his criminal record – which is completely false as Plaintiff has correspondence from Defendant Parker that he didn't search Plaintiff's criminal record until after Plaintiff had already been terminated.

48.     To date, Plaintiff has still not been fully paid for all of his promised commissions, overrides, or bonuses.

**Count I**
**Violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. §§ 201 *et. seq.*)**
**(Overtime and Minimum Wage Violations)**
**- Against All Defendants -**

49.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50.     At all times relevant herein, Defendants, have and continue to be, "employer[s]" within the meaning of the FLSA.

51.     The FLSA requires covered employers, such as Defendants, to minimally compensate their "non-exempt" employees, such as Plaintiff, at a rate of 1.5 times the employee's regular rate of pay for each overtime hour that the employee works in excess of 40 hours in a workweek.

52.     At all times during his employment with Defendants, Plaintiff was misclassified as an independent contract, when in reality Plaintiff was a non-exempt "employee" within the meaning of the FLSA.

53.     Defendants knew that Plaintiff was a "non-exempt" employee within the meaning of the FLSA and instead intentionally misclassified him to avoid federal and state wage and hour obligations (and tax obligations).

54.     Plaintiff consistently worked well over 40 hours per week while employed with Defendants; however, Defendants failed to pay Plaintiff proper overtime compensation for all hours that he worked over 40 hours in one week.

55.     Throughout Plaintiff's employment with Defendants, Defendants also improperly withheld and deducted Plaintiff's pay to the point where he was compensated below the minimum wage (for each hour that he worked) in many weeks.

56.     As a result of Defendants' failure to pay Plaintiff the overtime compensation due him (and even minimum wage some weeks), Defendants violated the FLSA and caused Plaintiff to suffer damages in the form of unpaid overtime and minimum wage compensation.

57.     Plaintiff is owed substantial monies in unpaid overtime and minimum wage compensation by Defendants and these actions as aforesaid constitute violations of the FLSA.

**Count II**
**Violations of the Pennsylvania Minimum Wage Act ("PMWA")**
**(Overtime and Minimum Wage Violations)**
**- Against All Defendants -**

58.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59.     Defendants' failure to pay overtime and minimum wage in the aforesaid manners also constitutes violations of the PMWA.

**Count III**
**Violations of the Pennsylvania Wage and Collection Law ("PWCL")**
**(Non-payment of full wages / Unlawful Wage Retention/ Unlawful Wage Withholding)**
**- Against All Defendants -**

60.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61.     A substantial portion of Plaintiff's wages (commissions, bonuses, and overrides) were illegally withheld and not paid to Plaintiff during his employment, despite Defendants' expressed agreements and/or promises to pay said wages.

62.     Defendants' actions as aforesaid constitute unlawful withholding, unlawful retention and/or nonpayment of wages under the PCWL.

**Count IV**
**Violation of Title 9 of the Philadelphia Code, the Wage Theft Ordinance**
**(Non-payment of full wages / Unlawful Wage Retention / Wage Theft)**
**- Against Defendant Entities Only -**

63.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

64.     Plaintiff specifically expressed concerns about wage withholdings, nonpayment of full commissions, bonuses, and overrides (*i.e.* wages under the PWPCL).

65.     The unlawful retention of funds by Defendants for their own benefit at Plaintiff's detriment constitutes wage theft under Title 9 of the Philadelphia Code ("the Ordinance").

66.     Moreover, Plaintiff's retaliatory termination constitutes unlawful retaliation under the Ordinance.

**Count V**
**Breach of Contract**
**Against All Defendants**

67.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

68.     Defendants entered into oral and written agreements with Plaintiff to pay him certain commissions and bonuses, as well as a 1% override on all revenue generated by his division in exchange for Plaintiff's services.

69.     While Plaintiff performed the services agreed on by Defendants and Plaintiff, Defendants failed to pay Plaintiff all commissions, bonuses and overrides that were agreed upon and/or promised by Defendants.

70.     As a result of Defendants' failure to pay all commissions, bonuses and overrides agreed upon (in writing and orally) by Defendants and Plaintiff, Defendants are in breach of contract.

**Count VI**
**New Jersey Common Law**
**(Promissory Estoppel / Detrimental Reliance)**
**- Against All Defendants-**

71.     The averments of the foregoing paragraphs are hereby incorporated by reference as if set forth fully herein.

72.     Defendants made multiple promises to Plaintiff, including but not limited to (1) that they would pay Plaintiff various commissions; (2) that they would pay Plaintiff for bonuses earned (and owed to him); (3) that it would pay Plaintiff a 1% override on any revenue generated by his division per week.

73.     To his detriment, Plaintiff continued to perform work for Defendants in reliance on Defendants' aforementioned promises; however, Defendants failed to pay Plaintiff everything promised to him (as discussed *supra*).

74.     Defendants should have reasonably foreseen that their aforementioned promises to Plaintiff would induce Plaintiff to stay in his position and continue to perform the services requested by him at the level of performance required and expected to be paid under those

promises.

75.     Injustice will result if Plaintiff is not compensated for the commissions, bonuses, and override promised to Plaintiff by Defendants.

76.     These allegations as aforesaid constitute violations of Pennsylvania's common law doctrine of Promissory Estoppel/Detrimental Reliance.

**Count VII**
**<u>Fraud - Misrepresentation</u>**
**- Against All Defendants -**

77.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

78.     Defendants willfully and fraudulently misclassified and represented to Plaintiff that he was an independent contractor who was not entitled to non-exempt wages under the PMWA, when in fact Plaintiff was a non-exempt employee entitled to such wages under the PMWA.

79.     Defendants willfully and fraudulently misclassified Plaintiff's earnings as non-employee income for the purpose of avoiding taxes.

80.     Plaintiff relied to his detriment on Defendants' representation that he was an independent contractor who was not entitled to overtime or minimum wages under the PMWA.

81.     As a result of his reliance on Defendants' fraudulent representation that Plaintiff was an independent contractor who was not entitled to employee wages under the PMWA, Plaintiff suffered harm in the form of the following damages:

    a.   Defendants did not withhold any taxes on Plaintiff's behalf;

b.   Because Defendants incorrectly classified Plaintiff as an independent contractor, Plaintiff was subjected to greater tax liability, paying both his and Defendants' share of FICA, FUTA, and other taxes;

c.   As a direct result of Defendants having incorrectly classified Plaintiff as an independent contractor, Defendants made no unemployment tax payments on Plaintiff's wages;

d.   As a direct result of Defendants' having misclassified Plaintiff as a 1099 independent contractor, Defendants made no social security contributions on Plaintiff's behalf.  Consequently, Plaintiff's retirement eligibility is less than it would be had Defendants not fraudulently misclassified him as a 1099 independent contractor instead of a non-exempt employee; and

e.   As a result of Defendants' misclassification of Plaintiff as a 1099 independent contractor, Plaintiff was not entitled to receive any other benefits through Defendants, including but not limited health benefits, 401k benefits, or other employee benefits.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, overtime, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered unlawful payment practices, retaliation, and discrimination at the hands of Defendants until the date of verdict;

B.      Plaintiff is to be awarded liquidated damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

D.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).


                                        Respectfully submitted,

                                        **KARPF, KARPF, & CERUTTI, P.C.**


                                By: _____
                                        Ari R. Karpf, Esq.
                                        3331 Street Road
                                        Two Greenwood Square, Suite 128
                                        Bensalem, PA 19020
Date: March 31, 2020                    (215) 639-0801

# Exhibit A

**New Message** ↓

 **Sung, Christine@EDD**                    11:09 AM
To You                                              ○ ○ ○

Hi Gino:
Good information! Yes, I do find you were misclassified and
should be reported as an employee. I have attached all you
sent me to this case. They do have the right to file petition.
So just in case we need to go to court, you know you will be
asked the same questions by ALJ. Once I have the wage
information, I will let you know before I send the response
back to UI office.

Regards,
Christine

---------- Forwarded message ---------
From: **Sung, Christine@EDD** <Christine.Sung@edd.ca.gov>
Date: Thu, Aug 29, 2019 at 2:36 PM
Subject: wages allowed
To: Gino Fracchiolla <ginofracchiolla79@gmail.com>

Hi Gino:

I closed the case and allowed wages $23,771.80 for 19-1. I held you to be a common law employee under Sec. 621(b) & 13004 CUIC & Sec. 4304-1 CCR, Title 22. You should receive something in writing from UI office regarding your claim/benefit within 10 days.

Have a nice weekend!

Regards,

Christine Sung

Tax Auditor

Tax Branch

Santa Fe Springs Area Audit Office, ARU #708

562-903-2102 Desk

562-903-4064 Office

916-449-1700 Fax

csung@edd.ca.gov

State of California

**Employment Development Department**

10330 Pioneer Blvd., Suite 150, Santa Fe Springs, CA 90670

www.edd.ca.gov


Our Business is Your Success[SM]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Gino Fracchiolla                                   CIVIL ACTION

v.

Hire My Team, LLC, et al.                          NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                         (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                                  (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)                                                                     (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X )

| 3/31/2020 | | Plaintiff |
| --- | --- | --- |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Clv. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __305 Coronado Avenue, Long Beach, CA 90814_____

Address of Defendant: __1635 Market Street, Philadelphia, PA 19103_____

Place of Accident, Incident or Transaction: __Defendants place of business_____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __3/31/2020_____  _____  __ARK2484 / 91538_____
                              *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.  Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☒ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify): _____*

**B.  Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify): _____*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Ari R. Karpf_____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c ) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __3/31/2020_____  _____  __ARK2484 / 91538_____
                              *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

FRACCHIOLLA, GINO

**DEFENDANTS**

HIRE MY TEAM, LLC., ET AL.

(b) County of Residence of First Listed Plaintiff   Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| 1 | U.S. Government Plaintiff | 3 | Federal Question *(U.S. Government Not a Party)* [X] |
| 2 | U.S. Government Defendant | 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & | **PERSONAL INJURY** | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | Slander | 365 Personal Injury - Product Liability | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 330 Federal Employers' Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 340 Marine | 368 Asbestos Personal Injury Product Liability | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| | 345 Marine Product Liability | | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | 480 Consumer Credit |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 370 Other Fraud | 710 Fair Labor Standards Act [X] | 490 Cable/Sat TV |
| 190 Other Contract | 360 Other Personal Injury | 371 Truth in Lending | 720 Labor/Management Relations | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 380 Other Personal Property Damage | 740 Railway Labor Act | 890 Other Statutory Actions |
| 196 Franchise | | 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 891 Agricultural Acts |
| | | | | 893 Environmental Matters |
| | | | | 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | 896 Arbitration |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | 950 Constitutionality of State Statutes |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | 462 Naturalization Application | |
| | | 540 Mandamus & Other | 465 Other Immigration Actions | |
| | 448 Education | 550 Civil Rights | | |
| | | 555 Prison Condition | | |
| | | 560 Civil Detainee - Conditions of Confinement | | |

**SOCIAL SECURITY** (within LABOR column area):
861 HIA (1395ff)
862 Black Lung (923)
863 DIWC/DIWW (405(g))
864 SSID Title XVI
865 RSI (405(g))

**FEDERAL TAX SUITS**:
870 Taxes (U.S. Plaintiff or Defendant)
871 IRS—Third Party 26 USC 7609

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| 1 Original Proceeding [X] | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from Another District *(specify)* | 6 Multidistrict Litigation - Transfer | 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
FLSA (29USC201)

Brief description of cause: Violations of the FLSA, the PA Minimum Wage Act, the PA Wage Payment & Collection Law, Title 9 of the Phila. Code, the Wage Theft Ordinance, and other applicable state law(s).

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   3/31/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

| Print | Save As... | Reset |