## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**GINO FRACCHIOLLA**

*Plaintiff,*

vs. | NO. 20-01684-WB

**HIRE MY TEAM LLC, et al.** | CIVIL ACTION

*Defendants.*

## ORDER

**AND NOW,** this _____ day of _____, 2021, after consideration of the Joint Motion for Approval of the Settlement Agreement filed by Plaintiff and Defendants Santos Gonzalez and Digital Candy LLC, it is hereby **ORDERED** that the Joint Motion for Approval of the Settlement Agreement, as reflected by the terms of the Joint Stipulation of Settlement and Release of Claims attached thereto as Exhibit A, is **GRANTED** in its entirety.

BY THE COURT:

_____
WENDY BEETLESTONE
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GINO FRACCHIOLLA** | |
| *Plaintiff,* | |
| vs. | NO. 20-01684-WB |
| **HIRE MY TEAM LLC, et al.** | CIVIL ACTION |
| *Defendants.* | |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT**
**UNDER THE FAIR LABOR STANDARDS ACT**

Plaintiff, Gino Fracchiolla, and Defendants, Santos Gonzalez and Digital Candy LLC ("Settling Defendants"), by and through their respective undersigned counsel, jointly move for the approval of the settlement of Plaintiff's claims brought under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), the Pennsylvania Wage Payment and Collection Law ("WPCL"), and Title 9 of the Philadelphia Code, the Wage Theft Ordinance and rely on the factual and legal analysis set forth in the accompanying memorandum of law.

Dated: September 9, 2021                Respectfully submitted,

                                   */s/ W. Charles Sipio*
                                   W. Charles Sipio, Esq.
                                   KARPF, KARPF & CERUTTI, P.C.
                                   331 Street Road
                                   Two Greenwood Square
                                   Building 2, Suite 128
                                   Bensalem, PA 19020
                                   215-639-0801
                                   Attorneys for Plaintiff

*/s/ Caroline M. Austin*

Caroline M. Austin, Esq.
Elisabeth Bassani, Esq.
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196
215-868-5517
Attorneys for Settling Defendants
Santos Gonzalez and Digital Candy LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GINO FRACCHIOLLA** | | |
| *Plaintiff,* | | |
| vs. | | NO. 20-01684-WB |
| **HIRE MY TEAM LLC, et al.** | | CIVIL ACTION |
| *Defendants.* | | |

## BRIEF IN SUPPORT OF THE JOINT MOTION FOR APPROVAL OF SETTLEMENT UNDER THE FAIR LABOR STANDARDS ACT

The above-captioned matter involves claims brought by Plaintiff against Settling Defendants for violations of the the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), the Pennsylvania Wage Payment and Collection Law ("WPCL"), and Title 9 of the Philadelphia Code, the Wage Theft Ordinance. Plaintiff and Settling Defendants respectfully move jointly for an order approving the settlement of his FLSA, PMWA, WPCL, and Title 9 of the Philadelphia Code, the Wage Theft Ordinance claims (the "FLSA Settlement"). As discussed below, the FLSA Settlement warrants judicial approval.

### I.    Background[1]

In this case, Mr. Fracchiolla alleges that he was hired by Defendants in or about December of 2018. Compl. at ¶13. Throughout his employment with Defendants, Mr. Fracchiolla was primarily supervised by the individual Defendants to this action. Id. at ¶14. At the time of his hire, Mr. Fracchiolla was given the title of Director of Partnerships and Business

---

[1] The factual recitation below represents Mr. Fracchiolla's allegations in this lawsuit consistent with his operative pleading. Settling Defendants deny these allegations.

Development. Id. at ¶15. On or about April 1, 2019, Mr. Fracchiolla was promoted to Vice President of Sales – California Division. Id. at 16.  Defendants are engaged in the business of web design, web development, search engine optimization ("SEO"), and digital marketing (among other web-based services) and Mr. Fracchiolla was responsible (in both of his roles with Defendants) to sell those services. Id. at ¶17.

Mr. Fracchiolla alleges Defendants Hire My Team, LLC, Hire My Agency, LLC, Digital Candy, LLC, and Digital Equity, LLC have and continue to constitute a single business, venture, enterprise and conflated entanglement of operations. Id. at ¶7.  He contends these entities are properly named in this lawsuit as a joint employer, integrated employer or single employer insofar as:

1. These businesses have been operated and managed by the same managers and/or owners, Defendant Adetunji Thomas-Ouarcoo and Defendant Santos Gonzalez;

2. These business names are used interchangeably depending upon project or work needed for different projects or for other reasons;

3. While Mr. Fracchiolla represented himself as an employee of Defendant Hire My Team, LLC, he received payment of wages from several of these entities throughout his employment, including Defendant Hire My Team, LLC, Defendant Digital Candy, LLC and Defendant Digital Equity.

4. Mr. Fracchiolla appeared on Defendant Hire My Team, LLC's and Defendant Hire My Agency, LLC's website as an employee – specifically the Vice President of Sales.

5. The entities overlap in finance, resources, negotiation, office space, management and ownership such that they basically function as a single enterprise.

Id. at ¶7.

### a. Misclassification as "Independent Contractor"

At the outset of Mr. Fracchiolla's employment with Defendants, Defendants attempted to classify Mr. Fracchiolla as an independent contractor and had him sign an agreement stating that he was an independent contractor. Id. at ¶18. However, notwithstanding the contract Mr. Fracchiolla signed at the beginning of his employment (discussed *supra*), he was at all times during his employment with Defendants misclassified as an independent contractor, when in fact he was an "employee," as evidenced by the following:

   a. Defendants dictated Mr. Fracchiolla's working hours. For example, Mr. Fracchiolla was directed when he needed to cover "LiveChats" – which included him working late nights and on weekends;
   b. Defendants often times instructed and/or dictated what Mr. Fracchiolla needed to work on throughout the week/day;
   c. Mr. Fracchiolla was provided with an organizational chart, which had him directly reporting to Sarah Clay (Director of Operations – hereinafter "Clay") and indirectly reporting to Defendant Individuals;
   d. Mr. Fracchiolla's office space in California was paid for by Defendants;
   e. Mr. Fracchiolla only worked for Defendants during his employment and was not permitted to work for any other company (primarily due to the number of hours that he was required to work for Defendants);
   f. The sign outside of Mr. Fracchiolla's office identified that the office was being used for Defendants' business (specifically Hire My Team, LLC);
   g. Mr. Fracchiolla was given an email address identifying him as an employee of Defendant Hire My Team, LLC;
   h. Mr. Fracchiolla's email signature line identified him as an employee of Defendant Hire My Team, LLC;
   i. Mr. Fracchiolla appeared on Defendant Hire My Team, LLC's and Defendant Hire My Agency, LLC's website as an employee (during and even after his employment);
   j. Mr. Fracchiolla was permitted to address any work concerns with Defendants' management;
   k. Mr. Fracchiolla was required to obey all directives given by Defendants' management;
   l. Defendants' management set goals for Mr. Fracchiolla and the team he supervised;
   m. Defendants' management had the ability to deny Mr. Fracchiolla's access to his accounts and work history;

3

n.   Mr. Fracchiolla was required to represent and hold himself out as an employee of
Defendants when speaking to staff or clients;

o.   Mr. Fracchiolla was required to attend meetings and/or telephone conference calls
when scheduled by Defendants' management;

p.   Mr. Fracchiolla's work performance was reviewed and critiqued by Defendants'
management;

q.   Mr. Fracchiolla was consistently supervised by Defendants' management;

r.   Defendants' management had the ability to dismiss Mr. Fracchiolla's employment
based on performance and/or behavior (or other reasons); and

s.   Mr. Fracchiolla was deemed a "misclassified employee" by the State of California's
Employment   Development   Department   ("EDD")   when   applying   for
unemployment benefits after he was terminated from his employment with
Defendants. Specially, Christine Sung, a Tax Auditor for the Tax Branch of EDD
held Mr. Fracchiolla to be a common law employee under Section 621(b) of the
California Unemployment Insurance Code ("CUIC"), Section 13004 of the UCIC
and Section 4304-1 of the California Code of Regulations ("CRR") Title 22.

Id. at ¶19; Exhibit "A" to Complaint.

Based on the foregoing and for other reasons, Mr. Fracchiolla asserts that he was an
employee of Defendants and therefore was deprived of benefits to which an employee would
normally be entitled, including but not limited to having income reported to Social Security for
retirement and benefits, health benefits, and deprivation of his own work earnings (including
overtime compensation – discussed *infra*). Id. at ¶20.

**b.  Defendants' Overtime Violations**

Because Mr. Fracchiolla was misclassified as an independent contractor, he was paid
varying lump sums on a weekly basis that Defendants deemed "commissions" and/or bonuses and
never kept proper track of the amount of hours that Mr. Fracchiolla worked during any given week.
Id. at ¶21. Additionally, some weeks during his employment with Defendants, Mr. Fracchiolla was
paid zero dollars. Id. at ¶22. Mr. Fracchiolla was also not provided with weekly paychecks
providing a breakdown of what was considered commissions vs. bonuses. Id. at ¶23. Instead,
Defendants wired Mr. Fracchiolla's weekly wages to his bank account and did not deduct federal
or state taxes. Id. at ¶24.

During the course of Mr. Fracchiolla's employment with Defendants, he was at all times a non-exempt employee who should have been entitled to overtime wages (at a rate of time and one half his average regular hourly rate). Id. at ¶25. Mr. Fracchiolla worked an obscene amount of hours for Defendants during his approximate 7-month tenure, often times working 12 hours a day, 6-7 days per week (for a total of approximately 72-84 hours per week). Id. at ¶26. At no point in time was Mr. Fracchiolla ever paid overtime compensation under federal or Pennsylvania state law (as required for non-exempt employees). Id. at ¶27. Furthermore, during the weeks that Mr. Fracchiolla was paid zero wages or very minimal wages, Defendants also violated federal and Pennsylvania state minimum wages laws by failing to pay him at least $7.25 per hour for each hour that he worked. Id. at ¶28.

At no point in time during his employment with Defendants did Mr. Fracchiolla qualify as an exempt employee under the Executive, Professional or Administrative exemptions provided for under the FLSA or Pennsylvania Minimum Wage Act. Id. at ¶29. For example, one element required to fall under any of the above three exemptions, Mr. Fracchiolla must have been compensated on a salary basis – which he was not, as Mr. Fracchiolla's pay varied every week, ranging from zero dollars to upwards of $3,000.00. Id. at ¶30. Mr. Fracchiolla was also not an outside sales person (but rather performed inside sales) and therefore did not qualify as an exempt employee under the FLSA or the PMWA for those reasons. Id. at ¶31. Furthermore, while employed with Defendants, Defendants never designated Mr. Fracchiolla as an employee who fell under any exemption provided for by the FLSA or the PMWA, as Defendants consistently misclassified him as an independent contractor from the inception of his employment until his termination. Id. at ¶32.

All of Defendants' actions as aforesaid are without question willful, intentional and in blatant disregard for state and federal laws, as evidenced by:

    a. Defendants intentionally misclassifying Mr. Fracchiolla as an independent contractor to avoid state and federal wage and hour obligations;
    b. Defendants failing to pay Mr. Fracchiolla overtime compensation for <u>all hours</u> that he worked in excess of 40 hours per week;
    c. Defendants often times failing to pay Mr. Fracchiolla enough wages and/or withholding/deducting his pay to the point where Mr. Fracchiolla was being paid below the federal and state mandated minimum wage; and
    d. Defendants failing to keep proper record of the number of hours that Mr. Fracchiolla worked in any given week.

<u>Id</u>. at ¶33.

Mr. Fracchiolla is therefore owed back pay and liquidated damages for Defendants willful failure to abide by federal and state overtime and minimum wage obligations. <u>Id</u>. at ¶34.

### c.   Failure to Pay Commissions and Bonuses

At the beginning of Mr. Fracchiolla's employment with Defendants, Defendants agreed to pay Mr. Fracchiolla the following commissions:

    i. "6% commission on anything Mr. Fracchiolla sold";
    ii. "8% commission on any deal after $30K sold in a week"; and
    iii. "10% commission on any of Gino's relationships."

<u>Id</u>. at ¶35.

Shortly after commencing his employment with Defendants, Defendants and Mr. Fracchiolla agreed that his commission structure would be modified to where Mr. Fracchiolla would receive 10% base commission and anything he sold and then 12% commission on anything he sold above $15,000.00 in revenue per week. <u>Id</u>. at ¶36. Throughout the course of his employment with Defendants, Mr. Fracchiolla was also promised additional commissions if he sold certain service packages (presumably as an incentive for Mr. Fracchiolla to sell those particular packages). For example, Mr. Fracchiolla was promised in writing that he would

receive 20% commission if he sold Platinum or Global Packages and had customers pay in full via wire transfer to Defendants' Philadelphia, PA location. Id. at ¶37. In June of 2019, Mr. Fracchiolla was sent an e-mail indicating that Defendants would also pay him 20% commission on any "wire for PIF [paid in full] or deposits." Id. at ¶38.

On or about April 1, 2019, Mr. Fracchiolla was promoted to Vice President of Sales – California Division. Along with his promotion, Mr. Fracchiolla was promised by Defendant Individuals that he would received a 1% override on any revenue that Defendant received per week (to be capped at $10,000 per month). Defendant Parker and Defendant Gonzalez later changed this promise to a 1% override on any revenue that Defendant's California division received per week. Id. at ¶39.

In addition to the aforesaid commissions promised to Mr. Fracchiolla by Defendants, Mr. Fracchiolla was also promised various incentive bonuses if he and/or his team met certain goals. The monetary amount guaranteed for these bonuses ranged from $200.00 to $500.00+ per week. Id. at ¶40. Despite all of Defendants promises and agreements to pay Mr. Fracchiolla various commissions, overrides, and bonuses, Mr. Fracchiolla was never paid all commissions, overrides, and/or bonuses that he was entitled to. Id. at ¶41. In fact, there were a few occasions where Mr. Fracchiolla was paid zero dollars or very minimal commissions/bonuses despite (1) Defendants' promise to pay him a 1% override on any revenue generated by his division per week; (2) Mr. Fracchiolla making multiple sales on a weekly basis; (3) Mr. Fracchiolla meeting certain goals for which Defendants promised to pay bonuses. Id. at ¶42.

Mr. Fracchiolla often times questioned and complained to Defendants' management about his pay and would indicate that he believed Defendants had not paid him properly under the promises and/or agreements set forth by Defendants' management (regarding commissions,

bonuses, and override). <u>Id</u>. at ¶43. Rather than rectify his concerns by paying him the wages he was entitled to, Defendants' management would instead give Mr. Fracchiolla the "run around," tell Mr. Fracchiolla the remainder of his wages would be coming soon (and then still never pay him), blame the lack of wages that Mr. Fracchiolla received on refunded sales, and/or simply ignore Mr. Fracchiolla's concerns. <u>Id</u>. at ¶44.

On or about July 5, 2019, shortly following his last complaints and/or expressed concerns regarding non-payment of wages (including commissions, bonuses, and overrides), Mr. Fracchiolla was terminated from his employment with Defendants. <u>Id</u>. at ¶45. Defendants first claimed in an email from Defendant Parker that Mr. Fracchiolla was being terminated for his "lack of respect" and "growing negativity" towards Defendant Parker, Defendant Gonzalez, and Clay. <u>Id</u>. at ¶46. Later in a post made by Defendant Parker online, Defendant Parker claimed that Mr. Fracchiolla was terminated because of his criminal record – which is completely false as Mr. Fracchiolla has correspondence from Defendant Parker that he didn't search Mr. Fracchiolla's criminal record until after Mr. Fracchiolla had already been terminated. <u>Id</u>. at ¶47. To date, Mr. Fracchiolla has still not been fully paid for all of his promised commissions, overrides, or bonuses. <u>Id</u>. at ¶48.

Mr. Fracchiolla has brought a seven ("7") count lawsuit against Defendants alleging violations of the FLSA (Count I), violations of the Pennsylvania Minimum Wage Act ("PMWA") (Count II), violations of the Pennsylvania Wage Payment and Collection Law ("WPCL") (Count III), violations of Title 9 of the Philadelphia Wage Theft Ordinance (Count IV), common law breach of contract (Count V), common law promissory estoppel / detrimental reliance (Count VI) and common law fraudulent misrepresentation (Count VII).

II.    **Legal Argument**

A.  **General Principles Pertaining to Judicial Review of FLSA Settlements.**

Although the Third Circuit Court of Appeals has not specifically addressed the standards to be applied in evaluating the fairness of an FLSA settlement, district courts within the Third Circuit Court have followed the position taken by the Eleventh Circuit Court of Appeals in <u>Lynn's Food Stores, Inc. v. United States Department of Labor</u>, 679 F.2d 1350, 1354-55 (11th Cir. 1982). <u>See</u> <u>e.g.</u> <u>Cuttic v. Crozer-Chester Med. Cntr.</u>, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012). In <u>Lynn's Food Stores, Inc.</u>, the Court held that court approval is required for settlements of claims brought under the FLSA pursuant to 29 U.S.C. § 216(b). <u>Lynn's Food Stores, Inc.</u>, 679 F.2d at 1354-55.

Judicial review of a proposed settlement agreement requires the court to examine the proposed settlement agreement of the parties and determine if it is "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." <u>Lynn's Food Stores, Inc.</u> 679 F.2d at 1355. Courts generally break this analysis down into three elements: (1) whether the settlement resolves a *bona fide* dispute; (2) whether the terms of the agreement are fair and reasonable to the employee; and (3) whether the terms of the agreement otherwise frustrate the implementation of the FLSA. <u>Ogunlana v. Atl. Diagnostic Labs. LLC</u>, No. 19-1545, 2020 WL 1531846, *3 (E.D. Pa. Mar. 31, 2020) (citation omitted).

B.  **The Proposed Settlement Resolves a Bona Fide Dispute.**

A proposed settlement resolves a *bona fide* dispute if it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute' and is not a 'mere waiver of statutory rights brought about by an employer's overreaching.'" <u>McGee v. Ann's Choice, Inc.</u>, No. 12-2664; 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014) (quoting <u>Lynn's Food Stores</u>, 679 F.2d at 1354). "Typically, Courts regard the adversarial nature

9

of a litigated FLSA case to be an adequate guarantor of fairness." Kauffman v. U-Haul Int'l, Inc.,

No. 16-4580, 2019 WL 1785453, at *2 (E.D. Pa. April 24, 2019). "In essence, for a bona fide

dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence

of the defendant's intent to reject or actual rejection of that claim when it is presented." Kraus v.

PA Fit II, LLC, 155 F. Supp. 3d 516, 530 (E.D. Pa. Jan. 11, 2016).

Here, a *bona fide* dispute exists as to Mr. Fracchiolla's claims in this lawsuit under the

FLSA, as evidenced by the Complaint and Answer filed in this action by the Settling Defendants.

Absent settlement, the respective arguments of the parties would have persisted through dispositive

motion practice, with each side arguing their respective positions to the Court. Specifically, the

parties would have hotly disputed whether, *inter alia,* Settling Defendants were Mr. Fracchiolla's

"employers" under the FLSA, the amount of Mr. Fracchiolla's recoverable damages and whether

Mr. Fracchiolla was exempt under the FLSA as a matter of law.

### C.  The Proposed Settlement Is Fair And Reasonable.

After determining that a *bona fide* dispute exists, the Court then must determine whether

the proposed settlement provides a fair and reasonable resolution of that dispute. When

determining whether a proposed settlement is fair and reasonable, district courts in this Circuit

consider the nine-factor test for evaluating proposed class action settlement agreements established

in Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975). *See e.g.* Lyons, 2015 WL at *4. The Girsh

factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the

class to the settlement; (3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability; (5) the risks of establishing liability; (6) the risks of

maintaining the class action through trial; (7) the ability of the defendant to withstand a greater

judgment; (8) the range of reasonableness of the settlement fund in light of the best possible

recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light

of all the attendant risks of litigation. <u>Girsh</u>, 521 F.2d at 157. No one factor is dispositive. <u>Hall v. Best Buy Co.</u>, 274 F.R.D. 154, 159 (E.D. Pa. 2011). And because <u>Girsh</u> was a class action, some of the factors are of "little help, if not irrelevant in the single-plaintiff context." <u>Howard v. Phila. Housing Auth.</u>, 197 F. Supp. 3d 773, 777 n.1 (E.D. Pa. 2016). However, district courts have looked to <u>Girsh</u> generally for guidance. *See e.g.* <u>Sorathia v. Fidato Partners LLC, et al.</u>, No. 19-04253-MSG (E.D. Pa.) at Docket Entry 38 at *7, ¶20.

Here, application of the majority of the relevant <u>Girsh</u> factors applicable to a single-plaintiff FLSA case compel a finding that the FLSA Settlement is fair and reasonable. As to <u>Girsh</u> factor 1 (complexity, expense, and likely duration of the litigation), as discussed above, the parties dispute whether Settling Defendants properly paid Mr. Fracchiolla for all hours worked, whether he was actually employed by Settling Defendants and whether he was indeed misclassified. Continued litigation and discovery of those issues will be costly, complex, and time-consuming, as it would require numerous depositions of witnesses (including a potential designee deposition pursuant to Fed.R.Civ.P. 30(b)(6)) and drafting and responding to a dispositive motion filed by Settling Defendants. The parties served and responded to interrogatories and document requests and had the litigation continued likely served requests for admissions and filed dispositive motions.

As to <u>Girsh</u> factors 4, 5, 8, and 9 (the risks of establishing liability and damages and the range of reasonableness of the settlement in light of the best possible recovery and all the attendant risks of litigation), even if Mr. Fracchiolla undertook the costly, complex, and lengthy discovery necessary to fully litigate this matter, he would still face the risk that he could not establish liability as to the Settling Defendants.  Specifically, Settling Defendants maintain that they are not joint employers of Mr. Fracchiolla and that Mr. Fracchiolla's claims against Settling Defendants are predicated solely on a few instances when Digital  Candy facilitated  commission  payments  to

11

Mr. Fracchiolla when Hire My Team exceeded its monthly limits on the Zelle payment app. Further, even if Mr. Fracchiolla established liability at trial, Settling Defendants would assert that Mr. Frachiolla is not entitled to any wage damages because he already received compensation for time worked that equals or exceeds applicable minimum wage and any alleged overtime worked. Settling Defendants would also assert that they acted in good faith and had objectively and subjectively reasonable grounds for believing its actions were in conformity with the FLSA. *See e.g.* Blan v. Classic Limousine Transp., LLC, 2021 U.S. Dist. LEXIS 59239, at *24 (W.D. Pa. Mar. 29, 2021) ("Liquidated damages are mandatory under the statute unless the employer can establish both the good faith and reasonableness of its failure to pay overtime wages.")

Accordingly, the total settlement amount of $22,500.00 is eminently reasonable as it represents a fair compromise on a disputed claim. This is particularly true because of the dispute as to whether Settling Defendants actually "employed" Mr. Fracchiolla, whether he is owed any additional wages, and whether he was indeed misclassified under the FLSA.

As to Girsh factor 3 (stage of proceedings and amount of discovery completed), if this case had not settled the parties would have proceeded forward with extensive depositions of the Plaintiff, Mr. Gonzalez and at least a Rule 30(b)(6) designee of Digital Candy LLC. Notwithstanding the same, given the exchange of documents and information in this matter, this settlement was reached by the parties each with a clear understanding and appreciation of their positions and the attendant risks and uncertainties of continued litigation in pursuing them. The parties entered the FLSA Settlement, the terms of which are reflected by the Joint Stipulation of Settlement and Release of Claims ("Settlement Agreement" attached as Exhibit A) after extensive back and forth negotiations in which they were each represented by able counsel experienced in

wage-and-hour matters. This further weighs in favor of a finding that the settlement is fair and reasonable. Based on the foregoing, the relevant Girsh factors are met.

Furthermore, the attorneys' fees award is reasonable. Courts within the Third Circuit generally apply the "percentage-of-recovery" method when assessing the reasonableness of attorneys' fees. See, e.g., Mabry v. Hildebrandt, No. 14-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015). "[T]he percentage of recovery award in FLSA common fund cases ranges from roughly 20-45%." Id. at *4. Plaintiff's counsel fee award falls well within that range. See, e.g., Rouse v. Comcast Corp., No. 14-1115, 2015 WL 1725721, at *12 (E.D. Pa. 2015) (approving 35% attorney's fees).

"Fee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." Aros v. United Rentals, Inc., 2012 WL 3060470, at *4 (D. Conn. July 26, 2012) (quoting Sand v. Greenberg, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)). In scrutinizing the fairness of FLSA settlements, and fees paid thereunder, courts in the Third Circuit have upheld similar contingency rates agreed upon between a plaintiff and his/her counsel as the contingency rate in the case at bar.  In Adams, et al. v. Bayview Asset Management, LLC, Docket 13-CV-05967 (E.D. Pa. 2013) (Brody, J.), the Court approved a 40% contingency fee for eight (8) different single-plaintiff cases, conditioned upon the plaintiff's counsel representing via affidavit that the contingency fee agreement existed at the commencement of the representation to verify plaintiff's counsel bore all of the risk of loss by proceeding with such litigation. In Messina et. al. v. Oxford Valley Cardiology Associates P.C. et. al, Docket No.: 16-CV-01008 (E.D. Pa., 2016) (Ditter, J.), the Court approved a 40% contingency fees for five (5) different single-plaintiff cases, and in assessing fees noted, "I find the attorney's fees to be reasonable based on counsels' joint

representation that the fees and costs incurred were proportional to the needs of the case and Plaintiffs' counsel's agreement not to seek payment for all services performed in order to facilitate the settlement of this dispute."). Id., at Dkt. No.: 24; Angela Edmondson v. Modern Group LTD.,et. al. Docket 14-cv-6706 (E.D. Pa. 2015) (Kearny, J.) (Court approving contingency rate in single plaintiff FLSA case); In this case, a 40% contingency is reasonable, particularly considering the significant legal challenges that would have been faced relative to the "executive exemption" under the FLSA. *See e.g.* Darosa v. Fla. Default Law Grp., P.L., 2011 U.S. Dist. LEXIS 94871, at *19 (M.D. Fla. Aug. 24, 2011) (granting summary judgment to an employer against claims brought by foreclosure supervisor who claimed she was misclassified); Hudson v. Absecon Emergency Servs., No. 14-6419 (RMB/AMD), 2016 U.S. Dist. LEXIS 129602 (D.N.J. Sep. 22, 2016) (granting summary judgment to an employer, finding that a "chief" of an EMS company was exempt under the FLSA); Simpson v. Prince Telecom, LLC, 2017 U.S. Dist. LEXIS 48481 (D. Del. Mar. 31, 2017) (granting summary judgment to an employer wherein the employee claimed he was misclassified as a salaried project manager). In short, there would have been a significant legal battle over whether Settling Defendants were Mr. Fracchiolla's "employers" for FLSA purposes and whether he was indeed misclassified. Plaintiff's counsel also secured a $201,000.00 judgment against the remaining Defendants that would be undisturbed by this proposed settlement.

Accordingly, the Court should find that the FLSA Settlement represents a fair and reasonable resolution of the *bona fide* dispute.

### D.  The Settlement Does Not Frustrate the Implementation of The FLSA.

Judicial review also requires determination of whether the settlement agreement furthers or "impermissibly frustrates" implementation of the FLSA in the workplace. Lyons v. Gerhard's Inc., No. 14-06693; 2015 WL 4378514, at *3 (E.D. Pa. July 16, 2015) (citations omitted). "'The

14

congressional purpose of the FLSA and the public's interest in the transparency of the judicial process' require district courts to review FLSA settlements for 'the existence of side deals or other conditions not present on the face of the employer's offer, including constraints on employees beyond their full compensation under the FLSA.'" Ogunlana, No. 19-1545, 2020 WL at *6 (quoting Brumley v. Camin Cargo Control, Inc., No. 8-1798, 2012 WL 10109337, *2 (D.N.J. Mar. 26, 2012)).

Here, the FLSA Settlement, as reflected by the Settlement Agreement, does not frustrate the implementation of the FLSA in the workplace because the release is properly limited and there are no confidentiality provisions. See Schwartz v. Penn. State Univ., No. 15-02176, 2017 WL 1386251, *3 (M.D. Pa. Apr. 18, 2017) (indicating that scope of release and confidentiality provisions are proper considerations for this prong, citing cases). The release of claims in the Settlement Agreement is limited to wage related claims that were raised or could have been raised in this matter and arising before the date of the Settlement Agreement. Such a narrowly-tailored release does not frustrate implementation of the FLSA.  See Southwood v. Milestone Management PA-Feasterville, LLC, No. 19-2569, 2020 WL 5554396 (E.D. Pa. Sept. 15, 2020) (finding release of wage-and-hour related claims arising before the date of the proposed settlement agreement sufficiently limited); see also Bettger v. Crossmark, Inc., No. 13-cv-2030, 2015 WL 279754 (M.D. Pa. Jan 22, 2015) (noting that district courts generally require FLSA settlements to limit release provisions to "claims related to the specific litigation," citing cases). For the foregoing reasons, the FLSA Settlement does not frustrate the implementation of the FLSA.

## II.    Conclusion

For the reasons stated above, the FLSA Settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. Accordingly, the parties respectfully request that the

Court grant their Joint Motion and enter an order substantially in the form attached hereto, approving the FLSA Settlement and dismissing Mr. Fracchiolla's claims with prejudice as it relates to those against Settling Defendants.

Dated: September 9, 2021                      Respectfully submitted,

                                        */s/ W. Charles Sipio*
                                        W. Charles Sipio, Esq.
                                        KARPF, KARPF & CERUTTI, P.C.
                                        331 Street Road
                                        Two Greenwood Square
                                        Building 2, Suite 128
                                        Bensalem, PA 19020
                                        215-639-0801
                                        Attorneys for Plaintiff

                                        */s/ Caroline M. Austin*
                                        Caroline M. Austin, Esq.
                                        Elisabeth Bassani, Esq.
                                        Duane Morris LLP
                                        30 South 17th Street
                                        Philadelphia, PA 19103-4196
                                        215-868-5517
                                        Attorneys for Settling Defendants
                                        Santos Gonzalez and Digital Candy LLC

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

GINO FRACCHIOLLA,

                Plaintiff,

     v.

HIRE MY TEAM, LLC, et al.,

                Defendants.

**CIVIL ACTION**

**NO. 2:20-CV-01684-WB**

### JOINT STIPULATION OF SETTLEMENT AND RELEASE OF CLAIMS

This Joint Stipulation of Settlement and Release of Claims ("**Settlement**") in the above-captioned matter is entered into individually and on behalf of Plaintiff GINO FRACCHIOLLA ("**Plaintiff**"), and Defendants SANTOS GONZALEZ AND DIGITAL CANDY, LLC, ("**Settling Defendants**") (Plaintiff and Settling Defendants are referred to collectively as the "**Settling Parties**").

**IT IS HEREBY STIPULATED AND AGREED**, by the Parties subject to approval of the Court, that the Settlement of the above-captioned matter shall be effectuated upon and subject to the following terms and conditions.

FACTUAL BACKGROUND

1.      Plaintiff filed his Complaint, Case Number 2:20-CV-01684-WB, in the United States District Court for the Eastern District of Pennsylvania (the "**Court**") on March 31, 2020 (the "**Lawsuit**") against Hire My Team, LLC, Hire My Agency, LLC, Digital Candy, LLC, Digital Equity, LLC, Adetunji Thomas-Quarcoo, and Santos Gonzalez (together, "**Defendants**").

2.      The Lawsuit alleges that Defendants misclassified Plaintiff as an independent

1

contractor and failed to pay Plaintiff overtime wages and commission/bonus payments allegedly earned by him and owed to him in violation of the Fair Labor Standards Act ("**FLSA**"), the Pennsylvania Minimum Wage Act ("**PMWA**"), the Pennsylvania Wage Payment and Collection Law ("**WPCL**"), and Title 9 of the Philadelphia Code, the Wage Theft Ordinance.

3.   On July 21, 2020, Plaintiff filed a Motion for Default Judgment against all Defendants.

4.   On July 30, 2020, the Court granted Plaintiff's Motion for Default Judgment against all Defendants, and entered a judgment for $201,000.00.

5.   On January 21, 2020, Settling Defendants filed a Motion to Vacate the Default Judgment against them, which the Court subsequently granted.

6.   The Settling Parties have since engaged in fact discovery, in accordance with the Court's Order issued on July 2, 2021.

7.   Plaintiff believes that he has meritorious claims based on alleged violations of the FLSA, PMWA, WPCL and Title 9 of the Philadelphia Code, the Wage Theft Ordinance.

8.   Settling Defendants specifically and generally deny any and all liability or wrongdoing of any sort arising out of, or related to, any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Lawsuit. Settling Defendants further contend, among other things, that Plaintiff at all times was compensated in compliance with federal and state law, and Settling Defendants complied with all applicable laws with respect to Plaintiff.

9.   On August 10, 2021, at the request of the Settling Parties, the Court referred this matter to Magistrate Judge Richard A. Lloret for settlement purposes. However, the Settling Parties were able to reach the Settlement without Magistrate Judge Lloret's involvement.

10.     Plaintiff is represented by W. Charles Sipio of Karpf, Karpf & Cerutti P.C. ("**Plaintiff's Counsel**"). Plaintiff's Counsel conducted an investigation into the facts, including obtaining and analyzing data from Settling Defendants relating to potential damages, and reviewing other documents. Plaintiff's Counsel has performed extensive research with respect to the applicable law, potential damages and available defenses to the claims asserted in this Lawsuit. Based on their investigation and evaluation, Plaintiff's Counsel is of the opinion that the Settlement with Settling Defendants is fair and reasonable and adequate, and in the best interest of Plaintiff in light of all known facts and circumstances, risks of significant delay and defenses asserted by Settling Defendants.

11.     Settling Defendants are represented by Caroline M. Austin, Joseph A. Battipaglia, and Elisabeth G. Bassani of Duane Morris LLP ("**Settling Defendants' Counsel**"). Settling Defendants have agreed to settle the Lawsuit on the terms set forth herein but deny any liability. Settling Defendants have concluded that it is desirable that the Lawsuit be fully and finally settled in the manner and upon the terms and conditions set forth herein in order to limit further expense, inconvenience, and distraction; dispose of burdensome and protracted litigation; and permit the operation of Settling Defendants' businesses without further expensive litigation with respect to matters at issue in the Lawsuit. Settling Defendants also have taken into account the uncertainty and risks inherent in this complex litigation.

12.     The Settling Parties believe that the Settlement is fair, reasonable and adequate. The Settlement was arrived at through arm's-length negotiations, taking into account all relevant factors. The Parties recognize the uncertainty, risk, expense and delay attendant to continuing the Lawsuit through appeal and any remand. Accordingly, the Settling Parties desire to fully, finally, and forever settle, compromise and discharge all disputes and claims arising from or

3

relating to the Lawsuit as set forth herein.

SETTLEMENT CONSIDERATION

13.     In consideration for signing this Settlement, and complying with its terms, Settling Defendants agrees to pay Plaintiff the total amount of Twenty-Two Thousand Five Hundred Dollars ($22,500.00) (the "**Settlement Payment**"). The Settlement Payment will be apportioned as follows:

a.     Settling Defendants will pay Plaintiff a total of $12,805.13.   One hundred percent (100%) of the gross amount of $12,805.13 is allocated to liquidated damages, and shall be reported on an IRS Form 1099, issued to Plaintiff, as "other income."

b.     Settling Defendants will pay Plaintiff's Counsel the amount of attorneys' fees, costs and expenses approved by the Court, up to a maximum of $9,694.87.

i.     Plaintiff and Plaintiff's Counsel agree that they will accept the amount of attorneys' fees, costs and expenses approved by the Court, even if the amount is less than the maximum agreed-upon amount of $9,694.87.

ii.     The Parties negotiated the agreed-upon amount of $9,694.87 for attorneys' fees, costs and expenses separately from the amount to be paid to Plaintiff pursuant to Paragraph 13(a).

iii.     The effectiveness of this Settlement is not conditioned upon any specific amount of attorneys' fees, costs or expenses being approved by the Court. The Court's award of an amount other than the maximum agreed-upon amount of $9,694.87 is not a ground to void the Settlement.

iv.     Settling Defendants shall not be liable to pay Plaintiff's Counsel any attorneys' fees, costs or expenses in excess of the maximum agreed-upon amount of

4

$9,694.87.

      c.     The Parties agree that nothing contained herein is intended to constitute legal advice regarding the taxability of any amount paid hereunder, nor shall it be relied upon as such. Plaintiff will be responsible for obtaining his own tax advice with respect to any payments resulting from this Settlement. Settling Defendants makes no warranty and have provided no advice regarding the tax treatment of the Settlement Payment. All taxes are the sole responsibility of Plaintiff, and Plaintiff must assume any such tax obligations or consequences that may arise from the settlement payment. Plaintiff is not entitled to nor shall he seek any indemnification from Settling Defendants or Settling Defendants' Counsel in this regard. Plaintiff agrees to indemnify and hold Settling Defendants and Settling Defendants' Counsel harmless from any claims, losses, demands, deficiencies, levies, assessments, executions, judgments, penalties, taxes, attorneys' fees or recoveries by any governmental entity against Settling Defendants or Settling Defendants' Counsel for any failure by Plaintiff to pay taxes due and owing, if any, on the Settlement Payment.

      d.     Settling Defendants will issue the Settlement Payment to Plaintiff and Plaintiff's Counsel, apportioned as set forth in this Paragraph 13, within thirty (30) days after the Court finally approves this Settlement.

14.     Upon final approval of this Settlement by the Court, Plaintiff agrees to take all action necessary to have the claims in the Lawsuit against Settling Defendants dismissed with prejudice, subject to the terms of Paragraph 16 below.

15.     Plaintiff understands and agrees that he would not receive the Settlement Payment described in Paragraph 13 above, except for the execution of this Settlement and the fulfillment of the promises contained herein.

RELEASE OF CLAIMS

16.     Subject to approval of the Court, in consideration of the Settlement Payment, Plaintiff releases and forever discharges Settling Defendants and its present and former parent companies, subsidiaries, divisions, related or affiliated companies, owners, shareholders, members, officers, directors, employees, consultants, agents, attorneys, insurers, successors and assigns, any individual or entity which could be jointly liable with any of the foregoing, and all other persons acting under the supervision, direction, control or on behalf of any of the foregoing (collectively, the "**Settling Defendants' Releasees**") of and from all claims that were alleged or could have been alleged by Plaintiff in the Lawsuit based on the factual allegations in the Lawsuit, whether known or unknown, through the date of this Settlement, limited to wage and hour claims under federal, state, or local law for hours worked, including such claims under the FLSA, PMWA, WPCL, Title 9 of the Philadelphia Code, the Wage Theft Ordinance or any other state minimum wage laws, state wage payment and collection laws, or state overtime statutes, and any common law claims relating to hours worked or wages owed, including promissory estoppel, fraud, misrepresentation, unjust enrichment and breach of express or implied contract. Subject to Paragraph 21, no provision of this Agreement shall be construed to waive Plaintiff's right to pursue the judgment entered against Hire My Team, LLC, Hire My Agency, LLC, Digital Equity, LLC and/or Adetunji Thomas-Quarcoo or the underlying claims against those non-settling Defendants should the judgment be disturbed or vacated by the Court for any reason.

17.     Plaintiff affirms that he has not filed, caused to be filed, or presently is a party to any claim against Settling Defendants, except those in this Lawsuit.

ADDITIONAL TERMS AND CONDITIONS

6

18.    The Parties agree that neither this Settlement nor the furnishing of consideration for this Settlement shall be deemed or construed at any time for any purpose as an admission by the Settling Defendants or Settling Defendants' Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind. The Settling Parties hereto have entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

19.    Plaintiff agrees that he has no right to employment or reemployment with Settling Defendants or any of the Settling Defendants' Releasees. In the event that Plaintiff seeks employment or re-employment in violation of this provision, Settling Defendants and Settling Defendants' Releasees shall not be obligated to employ or reemploy Plaintiff, and such conduct shall be lawful. Plaintiff acknowledges and agrees that his willingness to forbear from seeking future employment or work in any other capacity with Settling Defendants or any of the Settling Defendants' Releasees is a purely contractual term that Plaintiff finds acceptable based on consultation with his counsel and is in no way an involuntary, discriminatory or retaliatory imposition upon Plaintiff by Settling Defendants or any of the Settling Defendants' Releasees.

20.    Plaintiff agrees not to criticize, denigrate, or disparage, in writing, orally or electronically, Settling Defendants or any of the Settling Defendants' Releasees, or their respective products, services and properties. Similarly, Settling Defendants agree not to criticize, denigrate, or disparage, in writing, orally or electronically, Plaintiff. Plaintiff and Settling Defendants further agree that they will not initiate any publicity, including print, television, and/or internet (including social media), about the Lawsuit or this Settlement. Plaintiff will respond to any media inquiries by stating, "The matter has been resolved to the satisfaction of the Parties."

21.     All parties to the Lawsuit are permanently and forever barred and enjoined from filing, commencing, instituting, prosecuting, or maintaining, either directly, indirectly, representatively, or in any other capacity, any claim, counterclaim, cross-claim, third-party claim or other action arising out of the Lawsuit and/or the transactions and occurrences referred to in Plaintiff's Complaint (including, without limitation, any claim or action seeking indemnification and/or contribution, however denominated) against Settling Defendants and any of Settling Defendants' Releasees, whether such claims are legal or equitable, known or unknown, foreseen or unforeseen, matured or unmatured, accrued or unaccrued.

22.     This Settlement shall be governed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania.  In the event of a breach of any provision of this Settlement, either party may institute an action specifically to enforce any term or terms of this Settlement and/or seek any damages for breach.

23.     This Settlement may not be modified, altered or changed except in writing and signed by all Settling Parties wherein specific reference is made to this Settlement.

24.     This Settlement sets forth the entire agreement between the Settling Parties hereto, and fully supersedes any prior agreements or understandings between the Settling Parties. Plaintiff acknowledges that he has not relied on any representations, promises or agreements of any kind made in connection with his decision to accept this Settlement, except for those expressly set forth in this Settlement.

25.     This Settlement may be executed in one or more counterparts and by facsimile or email.  All executed copies of this Settlement, and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

26.     This Settlement is subject to approval by the Court.  In the event it is not approved, it shall be deemed null and void, of no force and effect, and of no probative value, and the Settling Parties hereto represent, warrant, and covenant that in that event it will not be used or referred to for any purpose whatsoever regarding the pursuit of the claims or defenses at issue in the Lawsuit.  In the event the Court does not approve the Settlement, the Settling Parties shall return to their respective positions immediately prior to the execution of this Settlement.

27.     The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Settlement and all orders and judgments entered in connection therewith, and the Settling Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the terms embodied in this Settlement and all orders and judgments entered in connection therewith.

28.     This Settlement shall be binding upon and inure to the benefit of the Settling Parties and the Settling Defendants' Releasees. The Settling Parties represent, covenant, and warrant that they have not, directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber, to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged.

29.     The Settling Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive, arms-length negotiations between the Settling Parties and that this Settlement shall not be construed in favor of or against any Settling Party by reason of the extent to which any Settling Party or his, her or its counsel participated in the drafting of this Settlement.

30.     Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this

Settlement or any provision hereof.  Each term of this Settlement is contractual and not merely a

recital.

*[signature page follows]*

IN WITNESS WHEREOF, the Settling Parties hereto have caused the Settlement to be executed, and this Settlement is AGREED TO.


DATED:___9/9/2021___                    ___ _____    _____
                                        Gir


DATED:___9/9/2021___                    _____
                                        W. Charles Sipio, Attorney for Plaintiff


DATED:_____September 8,                  _____
          2021
                                        Santos Gonzalez, on behalf of himself and
                                        Digital Candy, LLC